IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12-CV-455-MOC-DCK

| | |
|---|---|
| DOMINIC A SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 8) and "Defendant's Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed.</u>

### BACKGROUND

Plaintiff Dominic A. Simpson ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On March 16, 2009, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. 1383 *et seq.*, alleging an inability to work due to a

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as defendant in this suit.

disabling condition beginning March 16, 2009. (Transcript of the Record of Proceedings ("Tr.") 18). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on June 15, 2009, and again after reconsideration on October 13, 2009. (Tr. 18, 71, 82). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 82).

Plaintiff filed a timely written request for a hearing on December 14, 2009. (Tr. 18, 87-88). On October 18, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Todd D. Jacobson ("ALJ"). (Tr. 18, 32-57). In addition, Beverly M. Carlton, a vocational expert ("VE"), Angela Jackson, claimant's grandmother, and Lynne Sizemore, a non-attorney representative, also appeared at the hearing. (Tr. 18, 34).

The ALJ issued an unfavorable decision on November 17, 2010, denying Plaintiff's claim. (Tr. 15-28). Plaintiff filed a request for review of the ALJ's decision on December 1, 2010, which was denied by the Appeals Council on May 25, 2012. (Tr. 1-3, 13-14). The November 17, 2010 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 24, 2012. (Document No. 1). On July 24, 2012, the undersigned was assigned to

this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 8) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 9) were filed December 10, 2012; "Defendant's Motion For Summary Judgment" (Document No. 12) and "Defendant's Memorandum Of Law In Support Of Motion For Summary Judgment" (Document No. 13) were filed March 8, 2013; "Plaintiff's Memorandum In Response To Defendant's Motion For Summary Judgment" (Document No. 14) was filed on March 22, 2013; and "Defendant's Reply To Plaintiff's Response To Defendant's Motion For Summary Judgment" (Document No. 15) was filed on March 28, 2013.[2] The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is appropriate.

### STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir.

---

[2] Pursuant to NCWD Local Rule 7.1(E), in an action seeking Judicial Review of an agency decision, such as Social Security Disability and Supplemental Security Insurance benefit actions, the Court generally does not allow the filing of response or reply to motions for summary judgment. Moreover, the "Pretrial Scheduling Order" in this case did not allow for additional briefing, nor did either party request leave to submit supplemental briefs. (Document 7). These filings were reviewed, but not weighed as heavily as Plaintiff and Defendant's initial Motions for Summary Judgment.

2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time since March 16, 2009, the date the application was filed.[3] (Tr. 18). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from March 16, 2009, through the date of his decision, November 17, 2010. (Tr. 27).

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 26, 27).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since March 16, 2009, his alleged disability onset date. (Tr. 20). At the second step, the ALJ found that bipolar disorder and impulse control disorder, with alcohol abuse, were severe impairments. (Tr. 20).[4] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 21-22).

---

[4] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the "capacity to perform the full range of work at all exertional levels, but with the following nonexertional limitations: He is restricted to performing unskilled work involving limited interactions with others." (Tr. 22, 26). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 22). The ALJ further opined that "he also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 23).

At the fourth step, the ALJ found that Plaintiff has no past relevant work experience. (Tr. 26). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included: hand packager, nut and bolt assembler, and final assembler of eyeglasses. (Tr. 27, 55). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between March 16, 2009 and the date of his decision, November 17, 2010. (Tr. 27).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ's finding fails to adequately explain the weight given and fails to adequately consider the opinions of the consultative examiner and the non-examining State agency medical consultant; (2) the ALJ failed to adequately apply the effects of impulse control disorder in finding claimant's residual functional capacity; and (3) the ALJ erred when finding claimant's residual functional capacity when he failed to explain the inconsistencies in the evidence and failed to consider each

function separately. (Document No. 9). The undersigned will discuss each of these contentions in turn.

A. **Medical Opinions**

In his first assignment of error, Plaintiff argues that the ALJ failed to properly explain the weight given to and to properly consider the medical opinions of the consultative examiner and the State agency medical consultants in the record. (Document No. 9, pp.8, 10) (citing 20 C.F.R. § 416.927(b)). Plaintiff notes SSR 96-6p states that findings regarding the nature and severity of an impairment made by State agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources." Id. Plaintiff contends that the ALJ ignored the guidelines set out in 20 C.F.R. § 416.927(a) through (e) and SSR 96-6p, requiring the ALJ to consider findings of all medical opinions received and explain the weight given to each opinion.

The record suggests that the ALJ was aware of the proper weight to give to the medical opinions. Step 4 of the ALJ's analysis states:

> In making this decision, <u>the undersigned has given great weight to the evaluation reports of Dr. Thompson and Dr. Abramowitz</u>. The undersigned notes that, although the claimant testified he attended therapy for several months, there are no other mental health treatment records, apart from Dr. Thompson's evaluation, in the file. No treating psychiatrists or therapists have provided an assessment of claimants functional capabilities, or in any way restricted his activities. <u>In absence of a functional capacities evaluation completed by a treating physician, substantial weight is also given to the findings of the state agency medical consultants.</u> As a non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. <u>SSR</u> 96-6p. The state agency physicians concluded that the claimant had no exertional limitations. State Agency psychological consultants found the claimant's allegations of mental impairment to be credible, but that he retained the

> capability to perform simple, routine, repetitive tasks. In making a function-by-function assessment, the undersigned generally agrees with the functional limitations found by the State agency medical consultants, except that the undersigned would also restrict the claimant's workplace interactions with other individuals.

(Tr. 26) (emphasis added).

Defendant argues, and the undersigned agrees, that as long as the opinion does not ignore the medical record and explains the weight given to the decision, the ALJ has provided sufficient evidence. SSR 96-6p. The undersigned finds the ALJ adequately states the weight given in making his finding: "the undersigned has given great weight to the evaluation reports of Dr. Thompson and Dr. Abramowitz;" and "substantial weight is also given to the findings of the state agency medical consultants." (Tr. 26).

Next, Plaintiff argues that the ALJ failed to provide an adequate justification for findings that "**directly conflict**" with the opinion of the consultative exam and the State agency medical consultant's opinion. (Document No. 9, p.10) (emphasis added). Plaintiff asserts the ALJ's findings do not support the ALJ's statement that he gave great weight to the opinions of the consultative examiner, Dr. Abramowitz, and that he gave substantial weight to the opinions of the State agency medical consultant, Dr. Williams. (Document No. 9, pp.9-10).

Specifically, Plaintiff believes the following statement of Dr. Abramowitz **directly conflicts** with the ALJ's finding: "[claimant] likely would have difficulty tolerating the stress and pressure of a work setting given his history and possibly with the assistance of VR might be able to learn overtime to function in a work setting, but it is unclear at this time." (Document No. 9, p.9). Additionally, Plaintiff alleges Dr. Williams' opinion that "Mr. Simpson is limited to simple, routine, repetitive tasks ('SSRTs')" **directly conflicts** with the ALJ's finding. (Document No. 9, p.10).

8

Defendant responds that even though the ALJ did not explicitly address Dr. Abramowitz's concerns for Mr. Simpson's "difficulty with the stress and pressure of a work setting, as well as his possible need for vocational rehabilitation, the ALJ did consider the report as a whole and discussed several of the findings." (Document No. 13, p.5). Defendant argues that the ALJ's failure to discuss a specific piece of evidence does not mean that it was not considered, and that the ALJ is not required to expressly refer to each piece of evidence used in his opinion. Id. Additionally, Defendant acknowledges that unskilled work is not necessarily synonymous with Dr. Williams' opinion that Plaintiff is limited to performing SSRTs; however, Defendant argues that the "ALJ is not required to adopt the opinion of a nonexamining state agency medical consultant in its entirety." (Document 13, pp.8-9) (citing 20 C.F.R. 416.927(e), SSR 96-6p, 1996 WL 374180 (the opinions of state agency medical consultants are given weight only insofar as those opinions are supported by the case record)).

The undersigned finds substantial evidence exists to show that the ALJ evaluated every medical opinion and did not ignore the nonexamining medical consultant's opinions. SSR 96-6p; 20 C.F.R. §§ 404.1527(b), 416.927(b). While Plaintiff can argue that the ALJ's opinion may conflict with parts of the medical consultant's opinions, the undersigned disagrees that the findings **directly conflict** with Dr. Abramowitz' and Dr. Williams' opinions. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Also, the undersigned believes the ALJ is not required to give a nonexamining state agency medical consultant substantial weight, but only to explain how he considered the evidence from various sources. See 65 Fed. Reg. 11,867-11,881 (March 7, 2000).

Additionally, the undersigned finds the ALJ adequately addressed Dr. Williams' opinion that Mr. Simpson was limited to SSRTs. An ALJ may consider opinions when reviewing the evidence and making findings of fact and conclusions of law, but is not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists. 20 C.F.R. § 416.927(f)(2)(i). While the undersigned agrees that simple, routine, repetitive tasks equate to a narrower limitation than unskilled work, the ALJ adequately narrowed Mr. Simpson's residual functional capacity: nonexertional limitations to unskilled work with an additional limitation requiring limited interactions with others. (Tr. 22); McClendon v. Astrue, 2012 WL 13525 (M.D.N.C. Jan. 4, 2010); See Teeter v. Astrue, No. 3:12-CV-190-GCM, 2012 WL 5405531 (W.D.N.C. Nov. 6, 2012) (affirming and finding that unskilled work is not synonymous with a limitation to simple, routine, repetitive, tasks); Walls v. Astrue, No. 1:11-CV-318-MR, 2013 WL 954361 (W.D.N.C. Feb. 22, 2013) (remanding the decision after finding the ALJ did not clearly show whether he intended to limit Plaintiff to only unskilled work or unskilled work with limitations relating to simple, routine, repetitive tasks); Haselden v. Astrue, 2011 WL 2036457 (D.S.C. May 21, 2011) (finding simple, routine, repetitive tasks are nonexertional limitations of unskilled work). Here, the ALJ specifically added an additional limitation to Plaintiff's nonexertional limitation to unskilled work, thus satisfying Dr. Williams' SSRT finding. (Tr. 22, 26).

Based on the substantial evidence in ALJ's decision, the ALJ did not fail to establish the weight given to the consultative examiner or the State agency medical consultants; nor did he fail to adequately consider the above medical opinions.

B.  **RFC Finding**

In his second assignment of error, Plaintiff argues the ALJ ignored Plaintiff's severe impairment when evaluating his residual functional capacity. (Document No. 9, p.10). Specifically, Plaintiff argues the ALJ's decision either **failed to understand or consider, or chose to ignore the effect** of this impairment:

> The ALJ understands that the claimant has faced several challenges while growing up, and had a great deal of admiration for his grandmother, Ms. Jackson, who stepped in and provided a stable home and support for the claimant when he was a child. But now he is an adult. He cannot continue to destroy property or lash out violently at others like a child when things do not go his way.

(Document No. 9, p.10-11) (citing Tr. 25).

Plaintiff argues that the ALJ's statement evidences his failure to understand that this is a psychological impairment and Mr. Simpson does not choose to act this way. (Document No. 9, p.11). Plaintiff believes the ALJ's functional review and finding contradicts the definition of impulsive behavior. Id. Plaintiff emphasizes that impulsive behavior or acts (caused by impulse control disorder) are acts over which the individual has little or no control, believing the ALJ completely discounted this effect based on his finding. Id.

Defendant asserts that the ALJ adequately considered the effects of Mr. Simpson's impulse control disorder on his functional capacity, and that his analysis led to his finding that Mr. Simpson was limited to unskilled work involving limited interactions with others. (Document No. 13, p.14) (citing Tr. 22). The ALJ found that in light of "the effects of impulse control disorder" on Plaintiff's functional capacity, "the ALJ considered the medical evidence, medical opinions, Plaintiff's testimony, and Plaintiff's daily activities" and provided substantial evidence to support the ALJ's consideration of Plaintiff's disorder. Id.

The undersigned finds that Plaintiff's claim that Defendant **failed to understand or consider or chose to ignore the effect** of Plaintiff's impairment is unpersuasive. The ALJ's analysis addresses Mr. Simpson's impulse control disorder, particularly his ability and inability to control his actions. Step 4 of the ALJ's decision includes the following analysis:

> Ms. Jackson acknowledged that since the claimant had started attending therapy, and had been taking psychotropic medications, his behavior had improved. According to her report, when on medications, he was able to stay "calm for about five to six hours."

(Tr. 25); see also (Tr. 169, 200).

Additionally, in step 4 the ALJ noted Dr. Abramowitz' and Dr. Thompson's consultative evaluation of Mr. Simpson stating:

> During his consultative psychological evaluation by Dr. Abramowitz, the claimant was also able to control his behavior, and respond in an appropriate manner to the situation. Dr. Abramowitz described the claimant in his report as "relaxed" and "calm," and observed that his motor activity was also relaxed. Dr. Abramowitz stated that, "The claimant was cooperative and pleasant throughout the interview." (Ex 2F/2) During his initial evaluation by Dr. Thompson at CMC Randolph, the claimant was also observed to be "pleasant and cooperative," and according to Dr. Thompson, he was able to "easily" establish a rapport with the claimant. His speech was described as "conventional" and his progression was described as "logical and coherent." His mood and thought content reflected what Dr. Thompson described as "a serious concern about himself;" the claimant showed what Dr. Thompson described as a "genuine motivation to examine his behavior and make changes." The claimant appeared to be of "above average intelligence," and his abstract thinking was "quite good." Apparently, when he makes an effort, and has a goal in mind, the claimant is able to exercise some measure of self-control.

(Tr. 26); see also (Tr. 180-184).

The undersigned believes that in light of the definition of impulse control disorder and its effects, and the ALJ's recognition of Mr. Simpson's impairment, Defendant did not fail to

12

consider Mr. Simpson's impulse control disorder, and that there is sufficient evidence in the opinion to support the ALJ's review of the effects this disorder has on Mr. Simpson's case.

### C. RFC Evaluation

In his final assignment of error, Plaintiff argues the ALJ failed to comply with SSR 96-8p and SSR 85-15. (Document No. 9, p.12). Plaintiff contends that the ALJ's analysis of Mr. Simpson's residual functional capacity was "incomplete, inaccurate, and fails to conform to the Commissioner's own rules thus is not supported by substantial evidence." (Document No. 9, p.15). Specifically, Plaintiff believes the ALJ failed, as required, to "make findings regarding whether the claimant can: (1) understand, carry out, and remember simple instructions; (2) respond appropriately to supervision, coworkers, and usual work situations; and (3) deal with changes in a routine work setting. (Document No. 9, p.14); SSR 96-8p.

Defendant argues that the ALJ provided a substantial and adequate explanation of his RFC finding. (Document No. 13, p.19). The ALJ found that "Plaintiff had no exertional limitations, noting that the state agency physicians found no exertional limitations." (Document No. 13, p.18). Recognizing Mr. Simpson's severe mental limitations, bipolar disorder and impulse control disorder, Defendant argues that "medical evidence and opinions, Plaintiff's responsiveness to treatment, and Plaintiff's daily activities" discredit Plaintiff's reported symptoms. (Document No. 13, p.16-17). Also, Defendant recognizes that the ALJ "did not explicitly address all of the work-related functions listed in SSR 96-8p." (Document No. 13, p.18). Defendant argues that the ALJ adequately discussed "those limitations which he found credible and supported by substantial evidence in the record;" and as to the limitations not discussed, the ALJ "implicitly found that Plaintiff experienced no limitations in those areas." (Document No. 13, p.15, 19).

13

Based on the parties' briefs and the record, the undersigned is persuaded that the ALJ appropriately based his findings on relevant evidence in the record; and properly assessed Plaintiff's ability to perform work-related mental activities, in a work setting, on a regular and continuing basis, despite impairments and related symptoms. See 20 C.F.R. §§ 416.945(a)(1), 416.945.

First, the undersigned finds the record provides substantial evidence to discredit Plaintiff's reported symptoms. When the ALJ evaluates a claimant's credibility, he is required to consider such factors as claimant's medical history, laboratory findings, treatment history, and reported daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). Additionally, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." SSR 96-7p. In light of the inconsistences within the record, the undersigned finds the ALJ's analysis provides substantial evidence to support his finding.

For example, the ALJ notes that Plaintiff told Dr. Abramowitz that he was a shelf stocker at a grocery store for a week and had worked at a farmer's market stocking shelves for six months, suggesting that Plaintiff can maintain some form of work. (Tr. 25, 184). Dr. Abramowitz wrote that during the consultation, "claimant was able to control his behavior, and respond in an appropriate manner." (Tr. 25, 183). The report also provides that Plaintiff hangs out with friends, enjoys playing sports, and participates in house work and yard work. (Tr. 21, 25, 184-185). The ALJ finds these statements are inconsistent with claimant's report "that he normally had difficulties with authority and job situations." (Tr. 25). The ALJ found claimant "get[s] along well enough with his friends when he is 'hanging out,' or playing sports, activities

14

which he admitted to Dr. Abramowitz that he enjoys. He apparently does not like to be told what to do, and the evidence indicates, to paraphrase his grandmother, he wants to have his own way." Id.

Further the ALJ cited Dr. Thompson's opinion: Mr. Simpson is "logical and coherent," with an "above average intelligence," and a "genuine motivation to examine his behavior and make changes." (Tr. 26, 180). Based on this opinion, the ALJ found, "[A]pparently, when he makes an effort, and has a goal in mind, the claimant is able to exercise some measure of self-control." (Tr. 26). This establishes another inconsistency with Plaintiff's purported lack of self-control.

Next, the ALJ specifically considers the State agency psychological evaluations in his decision: the state agency found "claimant's allegations of mental impairment to be credible, but that he retained the capability to perform simple, routine, repetitive tasks." (Tr. 22, 26, 214). As such, substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but that Plaintiff is restricted to a nonexertional limitation of performing unskilled work involving limited interactions with others. (Tr. 22-27).

Lastly, the ALJ considered Plaintiff's grandmother's July 2009 statement, observing that since Mr. Simpson had started therapy and psychotropic medication, his behavior had improved and claimant was able to stay calm for five to six hours at a time. (Tr. 25, 169, 200). This statement further supports the ALJ's finding that Plaintiff is capable of some degree of unskilled work with limitations and that Plaintiff's alleged effects of his impairment are inconsistent with the record as a whole.

Based on the foregoing, as well as additional arguments in Defendant's brief, the

undersigned is satisfied that the ALJ properly evaluated the record and relied upon substantial evidence to support the his RFC finding.

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 8) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);

Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: August 23, 2013

David C. Keesler
United States Magistrate Judge